COMMONWEALTH *VS.* LAMONT L., a juvenile.

No. 00-P-1445.

Essex. March 7, 2002. - May 16, 2002.

Present: PORADA, MASON, & GREEN, JJ.

Further appellate review granted, 437 Mass. 1110 (2002).

*Juvenile Court,* Delinquent child. *Evidence,* Juvenile delinquency, Identification, Photograph, Consciousness of guilt. *Practice, Criminal,* Instructions to jury. *Youthful Offender Act. Assault and Battery.*

At the trial of a defendant as a youthful offender, it was within the judge's discretion to admit in evidence the photographic array from which the victim had identified the defendant as his assailant, where the array, which was relevant to the context of the victim's identification of the defendant, was not offered in a form that implied that the defendant had a prior criminal record, and where the judge clearly instructed the jury that no adverse inference was to be drawn against the defendant because the police had his photograph. [751-752]

A criminal defendant failed to demonstrate that evidence presented at a trial did not warrant a consciousness of guilt instruction, or that the instruction was inadequate because it did not include any specific reasons, other than consciousness of guilt, why the defendant might have fled the scene of the crime. [752-754]

At the trial of a defendant as a "youthful offender" for assault and battery, the judge incorrectly denied the defendant's motion for a required finding of not guilty, where assault and battery was not a crime for which the defendant, "if he were an adult, would be punishable by imprisonment in the state prison," as required by the youthful offender statute, G. L. c. 119, § 54. [754-755]

INDICTMENT found and returned in the Superior Court Department on October 20, 1999.

After transfer to the juvenile session of the Lynn District Court Department, the case was tried before *Michael C. Lauranzano,* J.

*Donna M. Coppola* for the defendant.

*Catherine Langevin Semel,* Assistant District Attorney, for the Commonwealth.

MASON, J. After a jury trial, the juvenile was adjudicated a youthful offender on two counts of assault and battery.[1] On appeal, the juvenile claims that the trial judge erred in (1) admitting in evidence the photographic array from which the victim identified the juvenile as his assailant; and (2) including a consciousness of guilt instruction in his charge to the jury. Although we find no merit in the juvenile's assertions of error on appeal, we reverse and remand to accommodate the requirements of the juvenile offender statute, G. L. c. 119, §§ 52 et seq.

*The Commonwealth's case.* The Commonwealth introduced the following evidence at trial. On July 18, 1999, at about 9:00 P.M., the victim, Ed Townsend, age nineteen, walked out of his home in Lynn and proceeded down the street to a local grocery store, known as Loft's Market, to purchase some ice cream. On his way into the store, Townsend observed but did not speak to three persons standing outside. These three persons included a female, Alice A.,[2] whom Townsend knew from the school he was then attending, the juvenile, with whom Townsend attended school some time previously but knew only as Alan,[3] and another male, whom Townsend did not know.

After Townsend had made his purchases, he walked out of the store and began heading back to his home. At that time, the juvenile called out to Townsend and, when Townsend kept walking, moved in front of him and hit him in the face with his fist. Another person began hitting Townsend from behind.

The assailants then pushed Townsend into an alleyway and continued their assault. At one point, the juvenile took off his belt and whipped Townsend three or four times about the shoulders with the metal clasp of the belt. Townsend was also pushed into a window. Townsend attempted to strike back at the juvenile, but he missed with his punch.

At about 9:17 P.M., Lynn police Officers David Brown and

---

[1] The second count was a lesser included offense of assault and battery by means of a dangerous weapon. The juvenile was also indicted as a youthful offender for armed robbery. This indictment was dismissed at the request of the Commonwealth.

[2] A pseudonym.

[3] A pseudonym.

Edward Pettitas arrived at the scene, having been dispatched to the area in response to a report of a fight. The officers were driving a marked cruiser. As they pulled up in front of Loft's Market, Brown observed several youths who were congregated together run away from the area in different directions. Then, as Brown exited his cruiser, he observed Townsend staggering on the sidewalk.

Brown asked Townsend what had happened, and Townsend responded that two males and a female had accosted him after he had purchased some ice cream in the store, and then had assaulted him when he had refused to stop and talk with them. Townsend further stated that one of the males was named "Alan," and he provided a description of the other male. He also stated that the female was named "Alice" and lived in the area. Brown observed that Townsend's left eye was red and beginning to swell, that he had welt-like marks on his shoulders and back, and that he had other abrasions on other parts of his body.

The officers then attempted to interview other youths who had remained in the area, but each of them stated that they had not seen anything. The officers also searched the area, but they could find neither the belt that Townsend said had been used to hit him, nor the ice cream that he said he had purchased in the store. The officers also drove Townsend around the block in an attempt to find suspects, but Townsend was not able to identify anyone.

Subsequently, however, the officers took Townsend to the police station and, after photographing his injuries, prepared and showed him a photographic array of six individuals, including the juvenile. At that time, Townsend identified the juvenile as his assailant. The juvenile was subsequently arrested.

*The defense.* The juvenile called three witnesses, including his father, Alice A., and Charles C.,[4] an acquaintance of both Townsend and the juvenile. The juvenile's father testified that he had seen his son at about 8:30 P.M. on the evening in question and his son was not wearing any belt at that time. The juvenile's father further testified that he had also seen his son

---

[4]A pseudonym.

on the following morning and, at that time, his son had red marks on his arm and his "face was puffed up a little."

Alice A. testified that it was Townsend, rather than the juvenile, who had started the fight. More specifically, Alice A. testified that she had been walking toward Charles C.'s house on the evening in question and had encountered Townsend walking from the direction of the market. Alice A. further testified that, at that time, Townsend had attempted to talk to her and, when she refused, had grabbed her and attempted to stop her. At that point, Alice A. had called out to the juvenile, who was standing nearby. When the juvenile asked Townsend what he was doing, Townsend had shoved the juvenile and the two had begun to fight. Alice A. further testified that, at some point, a "tall, black kid" appeared "out of nowhere," and began kicking both Townsend and the juvenile.

Finally, Charles C. testified that he had broken up the fight between Townsend and the juvenile before the police had arrived. Charles C. testified that he had not seen any third person involved in the fight and did not know whether the juvenile had left the area before or after the police had arrived.

1. *Admission of photographic array.* The judge, over the juvenile's objection, allowed the Commonwealth to introduce evidence of Townsend's pretrial identification of the juvenile from the photographic array shown to him at the police station, as well as the array itself. The juvenile claims that admission of the array violated his right to a fair trial since it failed to meet any need of the prosecution and was highly prejudicial to the juvenile.

It is well settled, however, that such arrays may be admitted in evidence if the prosecutor "shows some need for their introduction, they are offered in a form that does not imply a prior criminal record, and the manner of their introduction does not call attention to their source." *Commonwealth* v. *McAfee*, 430 Mass. 483, 493 (1999). See *Commonwealth* v. *Smith*, 29 Mass. App. Ct. 449, 451 (1990). In the present case, even though the juvenile was not contesting identity, the array was still "relevant to explain 'how the accusing finger came to be pointed at the defendant' " (citation omitted). *Commonwealth* v. *McAfee, supra.* Prior to being shown the array, Townsend had been able to identify his assailant

only by his first name. Moreover, none of the photographs included in the array had any markings identifying them as mugshots.[5] The judge also clearly instructed the jury that there were many different reasons for the police to have such photographs and that no adverse inference was therefore to be drawn against the juvenile because the police had his photograph. In these circumstances, it was within the judge's discretion to allow the array to be admitted as part of the context of the victim's out-of-court identification of the juvenile. *Id.* at 493-494.

The juvenile's reliance on *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619 (1986), *S.C.*, 400 Mass. 1002 (1987), is misplaced. In that case, the photograph introduced by the Commonwealth had not been used as part of any prearrest identification procedure and, indeed, it was taken under circumstances completely different from those represented by the prosecutor, and relied on by the judge, at the time of its admission. *Commonwealth* v. *Smith*, 21 Mass. App. Ct. at 621-623. Here, by contrast, the array was in fact used as part of a crucial prearrest identification procedure, and there was nothing to suggest that the photographs included in the array were acquired in connection with prior crimes.

We conclude that the judge could properly allow the array to be admitted.

2. *Consciousness of guilt instruction.* Prior to instructing the jury, the judge asked the prosecutor and defense counsel whether they thought the evidence warranted a consciousness of guilt instruction. The prosecutor urged that the evidence did warrant such an instruction since it showed that the juvenile had fled the scene of the fight upon the arrival of the police. Defense counsel, on the other hand, stated that he objected to any such instruction because there was no clear evidence that the juvenile had fled the scene of the crime upon the arrival of the police, rather than before their arrival.

---

[5]We reject the juvenile's claim that the jury could identify the photographs as mugshots because one of the individuals included in the array had a scar on his face. Such a scar could not by itself suggest that the individual shown in the photograph had engaged in criminal activity, or that the photograph was a mugshot.

The judge accepted the prosecutor's position and rejected the juvenile's position. The judge accordingly instructed the jury that they had heard evidence suggesting that the juvenile fled or left the scene of the alleged incident and that, if the Commonwealth had proven that the juvenile did leave the scene of the incident, then the jury could consider whether such action indicated feelings of guilt by the juvenile, and whether, in turn, such feelings of guilt might tend to show actual guilt on the charges in the case. The judge further instructed the jury that they were not required to draw such inferences and they should not do so unless they appeared to be reasonable in light of all the circumstances of the case. The judge then stated:

> "If you decide such inferences are reasonable, it will be up to you to decide how much importance to give them, but you should always remember that there may be numerous reasons why an innocent person might do such a thing.

> "Such conduct does not necessarily reflect feelings of guilt. Please also bear in mind that a person having feelings of guilt is not necessarily guilty, in fact, but such feelings are sometimes found in innocent people.

> "Finally remember that standing alone such evidence is never enough by itself to convict any person of a crime. You may not find the youthful offender guilty on such evidence alone, but you may consider it in your deliberations along with all the other evidence."

The juvenile claims that the judge erred in giving this consciousness of guilt instruction because the facts were not "conclusive" as to whether the juvenile had fled the scene. The juvenile further claims that, in any event, the instruction was inadequate because it failed to include any specific reasons other than consciousness of guilt why the juvenile may have fled.

In fact, as described above, Officers Brown and Pettitas testified that, as they arrived at the scene, they saw several youths running away from the area. Townsend also testified that he saw the police immediately after his attackers had fled. While not necessarily conclusive, this evidence was sufficient to warrant the judge's consciousness of guilt instruction, even though

neither the prosecutor nor the defense counsel had requested any such instruction. See *Commonwealth* v. *Simmons*, 419 Mass. 426, 435-436 (1995) (trial judge has discretion to give consciousness of guilt instruction even where no such instruction has been requested).

Moreover, the instruction given in this case was balanced and in accord with the principles announced in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). Particularly in the absence of any request by the juvenile, the judge was not required to include specific examples of reasons (other than consciousness of guilt) why the juvenile might have fled. See *Commonwealth* v. *Knap*, 412 Mass. 712, 715-717 (1992).

3. *Youthful offender adjudication.* At the close of the Commonwealth's case, the juvenile moved for a required finding of not guilty "or not a youthful offender." The youthful offender statute allows the Commonwealth to proceed by way of indictment against a juvenile for only those offenses "which, if he were an adult, would be punishable by imprisonment in the state prison." G. L. c. 119, § 54, as inserted by St. 1996, c. 200, § 2. Assault and battery is not such an offense. *Commonwealth* v. *Ulysses H.*, 52 Mass. App. Ct. 497, 501 (2001). Thus, the indictment for assault and battery must be dismissed. *Ibid.* See *Commonwealth* v. *Clint C.*, 430 Mass. 219, 229 (1999) (Ireland, J., dissenting) (court is deprived of jurisdiction where conduct juvenile is charged with "does not qualify him as a youthful offender"). Compare *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986) (court may reach issue not properly preserved for appeal where failure to do so would create a substantial risk of a miscarriage of justice); *Commonwealth* v. *Janvrin*, 44 Mass. App. Ct. 917, 917-918 (1998).

The second indictment, for assault and battery by means of a dangerous weapon, is not similarly flawed, as such conduct is punishable by imprisonment in the State prison. See G. L. c. 265, § 15A(*b*). Thus, pursuant to G. L. c. 119, § 54, the Commonwealth could proceed against the juvenile as a youthful offender for this offense. However, the jury returned a verdict on this indictment for the lesser included offense of assault and battery. Pursuant to G. L. c. 119, § 52, as inserted by St. 1996, c. 200, § 1, a juvenile cannot be adjudicated a "youthful of-

fender" unless he has "committed . . . an offense against a law of the commonwealth which, if he were an adult, would be punishable by imprisonment in the state prison." The jury having failed to convict him of such a crime, the juvenile could be neither adjudicated nor punished as a youthful offender, even though we find no merit in his claims of error. See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 866 n.8 (2001); G. L. c. 119, § 58.

*Conclusion.* The judgment on indictment no. YO 99Y0037 (assault and battery) is reversed, the verdict is set aside, and an order shall enter dismissing the indictment. The judgment on indictment no. YO 99Y0038 (assault and battery by means of a dangerous weapon, lesser included offense assault and battery) is vacated, the verdict adjudicating the juvenile a youthful offender is set aside, and the matter is remanded to the Juvenile Court where an entry shall be made on the docket adjudicating the juvenile delinquent on a complaint of delinquency by reason of assault and battery, and the juvenile shall be resentenced in accordance with this opinion and G. L. c. 119, § 58.

*So ordered.*