# COMMONWEALTH *vs.* JULIO DEJESUS.

No. 06-P-619.

Hampden. January 10, 2008. - May 29, 2008.

Present: GREEN, KATZMANN, & GRAINGER, JJ.

*Firearms. Assault and Battery by Means of a Dangerous Weapon. Evidence,* Photograph. *Practice, Criminal,* Instructions to jury, Severance, New trial, Defendant pro se.

Although the criminal defendant's counsel not only failed to object to the admission of photographic evidence at trial, which, together with accompanying police testimony (explaining that the photographs were compiled from a database of those with a prior arrest history), impermissibly informed the jury that the defendant had a prior criminal history and propensity for criminality, but further failed to propose an appropriate curative instruction to the jury, the defendant's ineffective assistance of counsel claim was nevertheless unavailing, where, given very strong independent evidence placing the defendant at the scene of the crime and substantiating his role, and the police officer's fleeting, nondescript reference to the mug shot array, the defendant had not demonstrated that counsel's performance likely deprived him of an otherwise available, substantial ground of defense. [801-807]

At a criminal trial, there was no error, let alone prejudicial error, resulting from the judge's honest mistake instruction which, although failing to use the exact wording requested by defense counsel, completely addressed the issue. [807-808]

A Superior Court judge properly denied the criminal codefendants' motions for severance, made before trial began, where their respective counsel did not offer mutually antagonistic theories supportive of severance, and where the issue became moot when the trial judge granted one codefendant's motion for a required finding of not guilty at the close of the Commonwealth's case. [808-810]

A Superior Court judge did not abuse his discretion in denying, without an evidentiary hearing, the criminal defendant's pro se motion for a new trial, where the defendant failed to provide sufficient credible information to support his claims, and where the judge, who was also the trial judge, could rely on his knowledge of the trial events when ruling on the motion. [810-811]

At the trial of indictments charging, inter alia, unlawful possession of a firearm and ammunition, the judge's instruction to the jury did not shift the burden of proof, and the defendant's counsel was not ineffective for failing to object to the instruction. [811-812]

Indictments found and returned in the Superior Court Department on February 25, 2004.

The cases were tried before *Daniel A. Ford*, J., and a motion for new trial, filed on September 12, 2005, was considered by him.

*Susan E. Taylor* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

Katzmann, J. On May 31, 2005, the defendant, Julio DeJesus, was convicted by a Superior Court jury of unlawful possession of a firearm, in violation of G. L. c. 269, § 10(*a*); unlawful possession of ammunition without an identification (F.I.D.) card, in violation of G. L. c. 269, § 10(*h*); and assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(*b*).[1] He now appeals from those convictions, as well as from the denial of his pro se motion for a new trial. He raises a variety of claims, principally involving photographic identification evidence and severance. We affirm.

*Background*. On January 13, 2004, near a Springfield car wash and gasoline station, from different vantage points, three eyewitnesses — Stuart MacGregor, James DeGray, and Fernando Basile — observed a gun fight break out between a shooter from a green Honda Accord automobile, later identified as Israel Cardona, and a single shooter from a silver Acura vehicle. It was not disputed that when arriving at the scene, the defendant had been seated in the front passenger seat of the silver Acura, and that his brother, Vito Resto, a codefendant as trial began, had been driving.[2] At trial, the primary issue was the identity of the shooter from the silver Acura who engaged in the firefight with Cardona. By the time of trial, Cardona, who refused to testify, had already pleaded guilty. As trial began, the jury were thus presented with the question whether the defendant (and his brother Resto) had assaulted Cardona with a firearm, G. L. c. 265, § 15A(*b*), and whether, being armed with a firearm, they had assaulted Cardona with intent to murder him, G. L. c. 265, § 18(*b*). At the close of the Commonwealth's case, the judge entered a

[1]He was acquitted on the charge of armed assault with intent to murder in violation of G. L. c. 265, § 18(*b*).

[2]There was an unidentified passenger in the back seat of the car.

required finding of not guilty for Resto, leaving the defendant to proceed alone. The defendant testified, and was the lone defense witness.

*Discussion.* 1. *Photographic evidence issues.* The defendant argues that the admission of photographic evidence at trial, together with accompanying police testimony, constituted mug shot evidence impermissibly informing the jury that he had a prior criminal history and propensity for criminality. He contends that defense counsel's failure to object when the evidence was introduced created a substantial risk of a miscarriage of justice and amounted to ineffective assistance of counsel. He further contends that counsel was ineffective for not accepting the judge's offer to provide immediately a curative jury instruction after the police testimony.

In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that there has been (i) "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and (ii) that this incompetence "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Rubeck*, 64 Mass. App. Ct. 396, 398 (2005), quoting from *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 760 (2002), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We note at the outset that a claim of ineffective assistance of counsel is usually "best left for resolution in the first instance by the trial judge on a motion for new trial." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994), quoting from *Gibney* v. *Commonwealth*, 375 Mass. 146, 148 (1978). "[O]ur case law strongly disfavors raising ineffective assistance claims on direct appeal," *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2 (2006), because this issue "is most appropriately left to the trial judge." *Commonwealth* v. *Ramos*, 66 Mass. App. Ct. 548, 553 (2006). However, because here the trial record alone permits us to address the second prong of *Saferian*, and thus to dispose of the defendant's claim, we resolve the issue on direct appeal. See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. at 344.

In this case, the Springfield police department compiled a photographic array of possible suspects to show to the three eyewitnesses. The array included frontal individual photographs

of eight men, each standing in front a cinder block wall. The top of each page of the array was labeled "Springfield Police Department Photo Array Images Associated with Case Number 04-228-AR." Officer Reid testified that he obtained the defendant's picture from a section of the police database containing photographs of people with past arrests. He stated that "in the computer system of the police department, they have a section of whoever was arrested[.] [A] photograph is taken of them and through this Records Management System, there is a particular field to recreate photo arrays." On the night of the shooting, from the array (which did not include a photograph of Resto), eyewitnesses DeGray and MacGregor identified the defendant as the shooter. The array was entered into evidence.

In responding to the contention that the photographs constituted inadmissible mug shot evidence, which should have drawn an objection from counsel, the Commonwealth claims, citing *Commonwealth* v. *Lamont L.*, 54 Mass. App. Ct. 748, 752 (2002), *S.C.*, 438 Mass. 842 (2003), that "none of the photographs included in the array had any markings identifying them as mugshots." This claim fails to recognize that the array evidence cannot be viewed in isolation, but must be assessed in the context of the accompanying testimony. It is true that the photographs here did not contain the common attributes of mug shots, such as "height scales in the background or chest plates that bear a name or number," *Commonwealth* v. *Smith*, 29 Mass. App. Ct. 449, 452 (1990), see *Commonwealth* v. *Cruz*, 445 Mass. 589, 594 (2005), and would, by themselves, likely be deemed sufficiently sanitized. See, e.g., *Commonwealth* v. *Smith*, *supra* at 451-453. However, the accompanying police testimony, explaining that the photographs were compiled from a database of those with a prior arrest history, unduly raised the taint of prior criminal activity. Contrast *Commonwealth* v. *Payton*, 35 Mass. App. Ct. 586, 595 (1993) ("no testimony . . . that the photograph was taken in connection with any other criminal event"). In sum, the jurisprudence governing the admission of mug shots is applicable here.

"It is a matter of fairly common knowledge that the central photographic files maintained by police do not . . . contain the likenesses of any save those who have had some contact with

criminal law." *Commonwealth* v. *Gibson*, 357 Mass. 45, 48-49, cert. denied, 400 U.S. 837 (1970). Accordingly, the courts have recognized that there is a "risk that any use in evidence of photographs . . . ordinarily used in police identification files will suggest to the jury that the defendant may have a prior criminal record." *Commonwealth* v. *Gerald*, 356 Mass. 386, 388 (1969). To minimize this risk of prejudice, the Supreme Judicial Court has concluded that "[m]ugshots may be admitted in evidence where '[1] the prosecution shows some need for their introduction, [2] they are offered in a form that does not imply a prior criminal record, and [3] the manner of their introduction does not call attention to their source.' " *Commonwealth* v. *Martin*, 447 Mass. 274, 286 (2006), quoting from *Commonwealth* v. *McAfee*, 430 Mass. 483, 493 (1999).

The police testimony here arguably violated the second and third *Martin* prongs.[3] As has been noted, that testimony about the array, referencing the criminal arrest database, strongly suggested that the defendant possessed a criminal record, and also showed the origins of the photographs. Moreover, Officer Reid testified that he showed this array to the eyewitnesses on the very same night that the firefight occurred. Another police officer testified that the eyewitnesses were shown the array rather than the defendant himself due to the seriousness of the defendant's injuries at that time. The jury were therefore fully aware that the detective compiled the array at a time when the defendant was hospitalized and could not possibly have been available to be photographed in front of a cinder block wall. This strongly suggested that the police already possessed a photograph of the defendant prior to the January 13, 2004, shooting. Compare *Commonwealth* v. *Gee*, 36 Mass. App. Ct. 154, 158 (1994) (placards appearing in photographs impermissibly suggested that police were in possession of defendant's picture due to criminal activity prior to offense at issue).

Whether or not the prosecution intentionally elicited this

[3]The defendant concedes that the prosecution met the first *Martin* requirement since the Commonwealth needed the photographs to prove the perpetrator's identity as the shooter. See *Commonwealth* v. *Gee*, 36 Mass. App. Ct. 154, 158 (1994) ("Where the sole issue at trial was the identification of the defendant, there can be little doubt as to the Commonwealth's need to use the photographs").

introduction of the defendant's prior bad acts, this testimony was inappropriate. "Evidence of prior bad acts may not be admitted to prove bad character or criminal propensity . . . ." *Commonwealth* v. *Kent K.*, 427 Mass. 754, 756 (1998), citing *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 370 (1997). While the evidence of prior bad acts may have been introduced unintentionally, the circumstances in which the evidence was admitted tended to demonstrate criminal propensity, which is prohibited. *Commonwealth* v. *Kent K.*, *supra* at 756.[4]

The detective's testimony did not draw an objection from counsel. The judge, however, offered to give a curative instruction immediately.[5] Trial counsel twice declined, stating that he preferred to have the instruction given with the general instructions. Accordingly, at the end of the trial, in his instructions to the jury, the judge attempted to cure any problems with the array and the accompanying police testimony. He told the jury, tracking language cited approvingly in *Commonwealth* v. *Blaney*, 387 Mass. 628, 636 n.7, 639 (1982):

> "[Y]ou must not draw any inference against the defendant simply because the police had his picture. Police departments collect pictures of many people from many sources for many different reasons, and you must not speculate what the reason may have been in this case. I instruct you in the strongest possible terms that the mere fact that the police may have had the defendant's picture does not mean that he committed this or any other crime."

[4]Indeed, the trial judge had granted the defendant's motion in limine to exclude evidence of prior convictions even for impeachment purposes.

[5]The exchange between the judge and defense counsel was as follows:

> THE JUDGE: "[D]o you want me to give the jury an instruction at this point the fact that the police have someone's picture could be because they collect photographs for different reasons, different sources, and there is no evidence of guilt? Do you want to have that?"
>
> DEFENSE COUNSEL: "I'll wait for the instructions at the end."
>
> ". . ."
>
> THE JUDGE: "Right. But if you want it now, I'll give it now, or I'll wait for the charge. Whatever you prefer."
>
> DEFENSE COUNSEL: "I'll wait for the charge."

The Commonwealth contends that this instruction was sufficient, noting that "[j]uries are presumed to follow the instructions given them." *Commonwealth* v. *Petersen*, 67 Mass. App. Ct. 49, 54 (2006), citing *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997). Had there been no reference by the detective to the defendant's prior criminal history, this limiting instruction might ordinarily be sufficient to safeguard against any potential prejudice. Compare *Commonwealth* v. *Blaney*, 387 Mass. at 639. Here, however, the police officer testified that the array was compiled from those individuals who had prior arrests. As such, we think that under the circumstances, a stronger instruction was required directing the jury to ignore the testimony insofar as it indicated that the defendant had a prior arrest record. See *Commonwealth* v. *Kent K.*, 427 Mass. at 756-757 (police testimony that photographs shown to victim's mother were taken from persons who had prior arrests was improper propensity evidence; judge's curative instruction, given immediately after objectionable testimony, adequately instructed jury to ignore that testimony).[6] Compare *Commonwealth* v. *Gee*, 36 Mass. App. Ct. at 160 (instruction insufficient to overcome prejudice from combined effect of unsanitized mug shots and police testimony concerning photographs). That being said, no such stronger instruction was sought here, and we must determine whether counsel's failure to propose an appropriate instruction "deprived the defendant of an otherwise available, substantial ground of defence." We determine that it did not.[7]

[6]In *Commonwealth* v. *Kent K.*, 427 Mass. at 757, the court did not state explicitly that the stronger instruction was required, but observed that it "adequately instructed the jury to ignore the testimony." The judge there instructed:

> "[A] witness has taken the stand and has testified that the books that he used . . . contain photographs, all of which were of people who were arrested at some time in the past. Now, that is for you to hear and . . . consider . . . . I instruct you notwithstanding whatever you determine the evidence to be that if you do determine that this juvenile might have been arrested sometime in the past, that you are to disregard that completely. Disregard that factor completely in this trial. It has nothing to do with the case, and it should not be in the trial, and I am striking it from the record. On top of that, I am telling you that that must be disregarded."

*Id.* at 757 n.1.

[7]Thus, even if counsel's actions were the result of "tactical or strategic

Unlike in some cases, here there was very strong evidence (independent of the photographic evidence) not only placing the defendant at the scene of the crime, but also substantiating his role as shooter. Contrast *Commonwealth* v. *Thayer*, 39 Mass. App. Ct. 396 (1995) (where evidence was not overwhelming and was based solely on witness's identification of defendant, admission of mug shots listing unrelated criminal activity created substantial risk of miscarriage of justice). While there was some divergence in the testimony of the eyewitnesses who viewed the incident from different vantage points, in basic respect that eyewitness testimony showed that there was a shooting involving two shooters, one who got out of a silver Acura, and the other who got out of a green Honda Accord. Both of the shooters were injured, and there was no evidence that any of the other people present at the scene were wounded. Immediately after the shooting, the green Honda Accord was driven to Mercy Hospital, where all of the eyewitness identified Cardona as being one of the shooters. The other vehicle, the silver Acura, was driven to Baystate Medical Center (Baystate). Officer Moran, who drove to Baystate in response to a report of a shooting, saw the wounded defendant at the entrance, in the passenger seat of the Acura, and the defendant's brother, Resto, who was not injured, in the driver's seat. At Baystate, the crime scene eyewitnesses identified the silver Acura, and none of them identified Resto as the shooter. While the eyewitnesses did not view the defendant at the hospital because he had been seriously injured and was being treated, the jury could have considered that the defendant was the only remaining injured person present at the crime scene — where there were only two shooters and they were the only individuals injured.[8] In

decisions," they were not "manifestly unreasonable." See *Commonwealth* v. *Payton*, 35 Mass. App. Ct. at 595-596, citing *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979).

[8]Officer Cass testified, based on his memory of that night, that other than Cardona and the defendant, there were no other reported shooting victims at any local hospital on the night of the incident. He further testified that in response to a query from the Commonwealth, he had confirmed that Cardona and the defendant were the only two reported victims. Officer Reid testified that according to standard procedures, when a hospital receives a gunshot victim, it notifies the police department. He "believe[d]" that there were three people who had gone to area hospitals for shooting at around 5 P.M. on January 13, 2004.

their assessment of the evidence, the jury could have inferred that the defendant was, indeed, the other shooter.

Quite apart from the strength of the Commonwealth's evidence, we also note that the police officer's reference to how the mug shot array was compiled was fleeting, did not identify what sort of prior offense may have been implicated by the prior arrest (or its seriousness), see *Commonwealth* v. *Kent K.*, 427 Mass. at 757, and was not mentioned in closing argument. Indeed, there was no reference to "mug shot" in the closing. See *Commonwealth* v. *Cruz*, 445 Mass. at 594. In sum, because the defendant has not demonstrated, as required by the second prong of *Commonwealth* v. *Saferian*, 366 Mass. at 96, that counsel's performance "likely deprived [him] of an otherwise available, substantial ground of defence," the claim of ineffective assistance of counsel is unavailing. See *Commonwealth* v. *Rubeck*, 64 Mass. App. Ct. at 398.

2. *Mistaken identification instruction.* The defendant challenges the adequacy of the jury instruction on honest mistaken identification. "Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it." *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983). See *Commonwealth* v. *Alleyne*, 10 Mass. App. Ct. 28, 31 (1980).

Here, the defendant specifically requested an honest mistake instruction, and the judge so instructed the jury.[9]

After hearing this instruction, defense counsel requested that

[9]The judge instructed:

> "Now, in addition to deciding whether or not to believe a witness who identifies the defendant as the perpetrator, remember that you must consider not only whether the witness is trying to be truthful or is lying, you must also decide whether that witness's testimony is accurate or instead is an honest mistake.
>
> "Sometimes people perceive an event erroneously or forget things or become confused. Deciding whether a witness is trying to be truthful is only the first step. You must then go on to decide whether the witness's testimony on this issue is accurate in fact.
>
> "Now, I once again emphasize that the burden of proof on [*sic*] the prosecutor and extends to every element of the crimes charged. And this specifically includes the burden of proving beyond a reasonable

the judge specifically instruct the jury as follows: "Even if you find that the witness is sincere and honest in his belief that the defendant committed the offense, you must still return a verdict of not guilty unless you're convinced beyond a reasonable doubt that the identification is accurate." The judge, concluding that he had already given this instruction using different language, noted the defendant's objection.

We review for prejudicial error. *Commonwealth* v. *Cruz*, 445 Mass. at 591.[10] Since this case hinged on the identification of the defendant, a good faith mistaken identification instruction was warranted. See *Commonwealth* v. *Pressley*, 390 Mass. at 620. The judge's instruction adequately and at length covered the very issue the defendant requested the court to address. The judge specifically noted the possibility of "honest mistake," noted that the witnesses might have been "confused," and informed the jury that they could not convict the defendant unless they believed "the accuracy of the identification" beyond a reasonable doubt. "The judge is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *Cruz*, 445 Mass. at 597, quoting from *Commonwealth* v. *Daye*, 411 Mass. 719, 739 (1992), quoting from *Commonwealth* v. *Anderson*, 396 Mass. 306, 316 (1985). While the judge did not use the exact wording requested by defense counsel, his instructions completely addressed the issue. As the judge gave a sufficient *Pressley* honest mistake instruction, there was no error, let alone prejudicial error.

3. *Failure to sever the codefendant's trial.* The defendant argues that the trial judge erred in denying the motions for severance presented by both codefendants before trial began. This claim has no merit.

doubt the identity of the defendant as the perpetrator of the crimes with which he stands charged. If you have a reasonable doubt as to the accuracy of the identification of the defendant as the shooter, then you must find the defendant not guilty."

[10]"This requires a two-part analysis: (1) was there error; and (2) if so, was that error prejudicial." *Commonwealth* v. *Cruz*, 445 Mass. at 591. "An error is not prejudicial only if the Commonwealth can show 'with fair assurance . . . that the judgment was not substantially swayed' by it." *Commonwealth* v. *Rosado*, 428 Mass. 76, 79 (1998), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

"A motion to sever is addressed to the sound discretion of the trial judge." *Commonwealth* v. *Collado*, 42 Mass. App. Ct. 464, 468 (1997), *S.C.*, 426 Mass. 675 (1998), citing *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). Failure to sever a codefendant's trial constitutes an abuse of discretion when the codefendants' defenses are so antagonistic that "[t]he only realistic escape for either defendant [is] to blame the other." *Commonwealth* v. *Moran*, *supra* at 659. See *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 637 (2005). See also Smith, Criminal Practice and Procedure § 20.31 (3d ed. 2007). However, if a defendant simply stands a better chance of acquittal if tried alone, severance is not required. *Commonwealth* v. *Twing*, 39 Mass. App. Ct. 75, 79 (1995).

"The denial of a requested severance does not require reversal unless the request is made at a time when the necessity for severance has been firmly established. A premature request for severance, not renewed when the necessity to sever has been established, is not sufficient." *Commonwealth* v. *Moran*, *supra* at 659-660. Here, at the pretrial stage, a motion judge and then the trial judge ruled appropriately that the question of severance was premature,[11] and suggested that it be revisited if either or both defendants decided to testify.[12] In opening statements, the Commonwealth stated that the evidence would show that the defendant had stepped out of a silver Acura and shot Cardona, and that the defendant's brother, Resto, had driven the Acura and had also taken the defendant to the hospital after he was shot. In their respective openings, counsel for Resto and the defendant did not offer mutually antagonistic theories supportive of severance.[13]

In any event, the severance issue became moot when the trial

[11]Indeed, at that time neither counsel was able to assert that his client would take the stand and testify that the other was culpable.

[12]The motion judge endorsed the motion to sever as follows:

> "[M]otion for relief for [*sic*] joinder is denied, the Commonwealth is not proceeding on the theory that either [the defendant] or his co-defendant, Mr. Resto, was the shooter, rather the Commonwealth is proceeding on the theory that [the defendant] was the shooter and Resto was an accomplice, unlike *Commonwealth* v. *Moran*, the necessity for severance has not been firmly established; whether a need for severance arises at trial will be decided by the trial judge."

[13]Resto's attorney suggested to the jury that the evidence would show that

judge granted Resto's motion for a required finding of not guilty, at the close of the Commonwealth's case. In essence, the defendant's request for a separate trial was realized, particularly where, as here, there was no prejudicial spillover arising from Resto's status as a codefendant. Indeed, the defendant took the stand and testified that his brother was the shooter.[14] Since it was no longer a joint trial, the question whether any resulting prejudice — if there was any — was "so compelling that it prevent[ed] [the] defendant from obtaining a fair trial" was eliminated. *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 944 (1998), quoting from *Commonwealth* v. *Dickerson*, 17 Mass. App. Ct. 960 (1983). Although the defendant testified that it was Resto, and not he, who had fired the weapon, the jury were not presented with a case of "antagonistic" or mutually exclusive defenses. The jury had only to decide the guilt or innocence of the defendant. Cf. *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978); *Commonwealth* v. *Nardone*, 406 Mass. 123, 129-130 (1989). The jury rejected the defendant's testimony, and the evidence supports the verdict.

4. *Other issues*. a. *Denial of defendant's pro se motion for new trial*. On September 12, 2005, the defendant filed a pro se

while he "supposedly" was driving the car, he did not participate in the shooting. The defendant's lawyer previewed no theory of the case, simply urging the jury to listen carefully to the evidence and to find the defendant not guilty.

[14]The defendant testified that on January 13, 2004, he was a passenger (along with another person) in a silver Acura driven by his brother, Resto, when, coincidentally, he saw a nearby motor vehicle being driven by Israel Cardona. The defendant further testified that Cardona had allegedly put a $50,000 "bounty" on his head because he believed that the defendant had stolen $150,000 from him. The defendant told his brother to signal Cardona to stop, so he could speak with him. Cardona got out of his car, and the defendant also got out, approaching and asking, "Are you looking for me?" Cardona then began shooting at the defendant, and the defendant "r[a]n for [his] life" to the Sunoco gasoline sation. The defendant testified that he did not have a gun on his person. He observed that his brother got out of the Acura and began firing at Cardona, and "as the protective brother, . . . told [him] duck, duck." The defendant did not know that his brother had a gun, and did not see any gun in the car. As the defendant was running to the gasoline station store, he was hit in the buttocks. After the defendant fled into the store, his brother drove up, got out, pulled the defendant onto the passenger seat, and drove him to Baystate Medical Center. The defendant reiterated in his testimony that at no time did he have a gun, nor did he fire at Cardona at any time.

motion for new trial pursuant to Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), arguing that he had had ineffective assistance of counsel because of poor communication, that Cardona should not have been allowed to invoke his right to remain silent when giving testimony out of the hearing of the jury, and that the Commonwealth withheld exculpatory evidence (the nature of which is not clear). The motion was not supported by affidavit or other corroborating documents. On September 14, 2005, the motion judge (who was also the trial judge) denied the motion without a hearing.

We review the decision of the judge for abuse of discretion. See *Commonwealth* v. *Walker*, 443 Mass. 213, 224-225 (2005), quoting from *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990) ("A motion for a new trial is addressed to the sound discretion of the judge . . . and the judge's disposition of the motion will not be reversed unless it is manifestly unjust . . . or unless the trial was infected with prejudicial constitutional error"); *Commonwealth* v. *Despres*, 70 Mass. App. Ct. 645, 649-650 (2007), quoting from *Commonwealth* v. *Acevedo*, 446 Mass. 435, 441 (2006) ("We review the denial of a motion for a new trial 'only to determine whether there has been a significant error of law or other abuse of discretion' "). In this case, as the motion judge and the trial judge were one and the same, we extend special deference. *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986), citing *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 543 (1971). The motion judge may rely on his knowledge of the trial events when ruling on the defendant's motion. *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981). As the defendant did not provide sufficient credible information to support his pro se claims for a new trial, the judge did not abuse his discretion in denying the motion.[15]

b. *Carrying a firearm and ammunition.* Regarding his convictions of unlawful possession of a firearm in violation of

[15]Nor did the judge abuse his discretion in declining to hold an evidentiary hearing on the motion. See *Commonwealth* v. *Goodreau*, 442 Mass. 341, 348-349 (2004) ("If the theory of the motion, as presented by the papers, is not credible or not persuasive, holding an evidentiary hearing to have the witnesses repeat the same evidence [and be subject to the prosecutor's cross-examination further highlighting the weaknesses in that evidence] will accomplish nothing").

G. L. c. 269, § 10(*a*), and unlawful possession of ammunition in violation of G. L. c. 269, § 10(*h*), the defendant argues that the instruction that the Commonwealth need not prove that the defendant did not have a license to carry a firearm and ammunition or an F.I.D. card shifted the burden of proof, thereby violating his due process rights. This claim has no merit. See *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977); *Commonwealth* v. *Farley*, 64 Mass. App. Ct. 854, 861-862 (2005). Given that the jury instructions were correct, there is no merit to the defendant's claim that counsel was ineffective for failing to lodge an objection to them.[16]

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

[16]The defendant's appellate counsel, in accordance with *Commonwealth* v. *Moffett*, 383 Mass. 201, 208 (1981), disassociated herself from the arguments on the firearm jury instruction and the denial of the motion for new trial.

To the extent that we do not address the defendant's other contentions, "they 'have not been overlooked. We find nothing in them that requires discussion.' " *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 389 (2004), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).