NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-272

ADOPTION OF INDI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a decree issued by a judge of the Juvenile Court finding her unfit, committing the child, Indi, to the permanent custody of the Department of Children and Families (department), and terminating the mother's parental rights.[1]  We affirm.

Background.  We summarize the trial judge's findings of fact, supplemented by uncontroverted evidence from the record, and reserve certain facts for later discussion.  The mother has "a history of mental health concerns and has been diagnosed with bipolar disorder, depression, anxiety, PTSD, ADHD, and opioid addiction disorder."  She also has a long history of substance

---

[1] The judge also declined to order any posttermination or postadoption contact between Indi and the mother.

use, for which she has intermittently received treatment for most of her teenage and adult life.

The mother gave birth to Indi in March 2022.[2]  A few days after Indi was born, the department received a report filed under G. L. c. 119, § 51A, alleging that he was a substance-exposed newborn and that the mother had been using substances throughout her pregnancy and living in a car with the putative father.[3]  The department commenced an investigation pursuant to G. L. c. 119, § 51B, and ultimately supported the allegation of neglect against the mother because of concerns of substance use and instability.  On March 23, 2022, the department filed the present care and protection petition pursuant to G. L. c. 119, § 24, and was awarded emergency temporary custody of Indi, who remained at the hospital for treatment for withdrawal symptoms. Beginning in March 2022, the department provided the mother with action plans which tasked her, inter alia, with maintaining her sobriety; developing and maintaining a stable, sober community; engaging in therapy; obtaining safe and stable housing

---

[2] The mother has three older children who are not named on this petition; her parental rights to those children were terminated.

[3] The putative father is not listed on the birth certificate and did not establish paternity.  On the first day of trial, the judge struck him from the petition.

appropriate for reunification with Indi; and attending weekly supervised parenting time with Indi.

The mother did not productively utilize the department's services or consistently visit Indi. The department provided the mother with access to the child while he was hospitalized, including overnight visits, which she declined. After several brief visits with Indi during his three-and-a-half-week hospitalization following his birth in March 2022, the mother maintained minimal contact with the department, did not engage with her action plan until November 2022, and did not visit Indi again until October 2022.

The mother experienced housing instability throughout the pendency of the case. From the time of Indi's birth in March 2022 to October 2022, the mother was "squatting" in a building. During a home visit in September 2022, outside the home the department's workers observed hypodermic needles and a large amount of trash and empty medication bottles belonging to the mother; the home had no electricity. During that time, the mother tested positive for cocaine and fentanyl and admitted to smoking crack cocaine. From November 2022 to January 2023, the mother alternated between sleeping at a hotel where her mother worked and sleeping in her car. She slept in her car from March 2023 to October 2023. The mother tested positive for cocaine in May 2023 and failed to provide the department with consistent

3

drug screens thereafter.  The department offered the mother a letter to enable her to enter a recovery program and reunify with her child there, which she declined.  She denied that she had a substance use issue.

In October 2022, the department changed Indi's permanency goal from reunification to adoption.  Indi transitioned to his preadoptive home in February 2023, where, at the time of trial in January 2024, he was thriving.  Indi's preadoptive family is "extremely involved with [his] growth and development, and advocate[s] for all his medical, educational, and extracurricular activities."

In November 2023, with trial then scheduled for December 2023, the mother began to engage with her action plan.  She completed an online parenting course, engaged in a domestic violence program, reengaged in counseling services, and obtained an apartment.  However, the mother admitted to her social worker that she told the housing resource that she and Indi would be reunified immediately if she obtained an apartment, though that was not true.

On December 8, 2023, the mother filed a motion to continue the trial, alleging that the department failed to comply with the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and that a continuance of the trial was necessary for remedial accommodations to be put in place.  The judge denied

4

the motion. On December 18, 2023, the mother filed a motion for a determination that the department failed to make reasonable efforts towards reunification and for entry of remedial orders (motion for reasonable efforts). The judge continued the motion to be heard with the trial.

Discussion. 1. Factual challenges. "Unless shown to be clearly erroneous, we do not disturb the judge's findings, which are entitled to substantial deference." Adoption of Jacques, 82 Mass. App. Ct. 601, 606-607 (2012).

The mother challenges three of the judge's findings on the grounds that they were incorrectly attributed in full or in part to the mother's testimony despite her never testifying at trial. Based on our review of the record, we conclude that these misattributions are harmless error because each of the contested findings is supported by the evidence. See Care & Protection of Olga, 57 Mass. App. Ct. 821, 824-825 (2003) (findings supported by evidence or that contain immaterial errors are not clearly erroneous).

The mother also argues that findings twelve and thirteen, taken together, are erroneous because the social worker did not make the referral until late 2023. Finding twelve states that the social worker learned of the mother's disability in September 2022. Finding thirteen addresses the social worker's consultation with a supervisor and efforts to schedule a

5

disability consult with the mother and refer her for a neuropsychological evaluation.  The mother contends that the findings imply that the department immediately investigated the disabilities when the social worker did not make the referral until late 2023.  In fact, the social worker testified that she consulted with her supervisor about the mother's disability in September 2022 and made efforts to pursue a neuropsychological evaluation in late 2022.  We discern no error.

We also find unconvincing the mother's contention that finding thirteen is erroneous as a matter of law for stating that a scheduled "disability consult . . . was unfruitful as mother never requested any accommodations."  Rather than expressing a legal conclusion, we construe this finding as representing the social worker's rationale pursuant to her understanding of the department's disability policy.

The mother also appears to challenge the judge's introductory statement in the findings that the mother "tested positive for prescribed subutex throughout her pregnancy, as well as marijuana" on the basis that the record elsewhere indicates only two positive marijuana screens.  We conclude that the error was immaterial considering the judge's subsequent finding that there were just two positive marijuana screens during the pregnancy.  See Care & Protection of Olga, 57 Mass. App. Ct. at 825.

Accordingly, we do not disturb the judge's lengthy and comprehensive "specific and detailed [findings] . . . demonstrat[ing] that close attention was given to the evidence." Adoption of Georgia, 433 Mass. 62, 66 (2000).

2. Reasonable efforts. The mother contends that, under the department's own disability policies and the ADA, the department had an obligation to commence accommodations for the mother's disability which was triggered as soon as the department became aware that the mother had a disability. She argues that the department's failure to meet this obligation constituted a failure to make reasonable efforts to reunify her with Indi and that the judge erred by failing to make findings as to the department's obligations and failures under the ADA and the department's disability policy. We disagree.

The department "is required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties." Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). "A judge's determination that the department made reasonable efforts will not be reversed unless clearly erroneous." Adoption of West, 97 Mass. App. Ct. 238, 242 (2020).

"[B]ecause termination proceedings do not constitute 'services' under the ADA, the ADA may not be raised as a defense in these proceedings." Adoption of Gregory, 434 Mass. 117, 118

7

(2001).  A parent who believes that the department is not reasonably accommodating a disability has the burden to "raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made."  Id. at 124.  To be timely, the claim should be raised "either when the parenting plan is adopted, when [the parent] receives those services, or shortly thereafter."  Id.  Failure to make a timely claim bars the parent from raising the department's "noncompliance with the ADA or other antidiscrimination laws for the first time at a termination proceeding."  Id.

We find unavailing the mother's contention that the judge abused her discretion in finding that the department made reasonable efforts toward reunification.  Here, the error alleged by the mother turns on her claim of inadequate services.  "Where a parent, as here, has cognitive or other limitations that affect the receipt of services, the department's duty to make reasonable efforts to preserve the natural family includes a requirement that the department provide services that accommodate the special needs of a parent."  Adoption of Ilona, 459 Mass. 53, 61 (2011).  "What constitutes reasonable efforts . . . must be evaluated in the context of each individual case."  Care & Protection of Walt, 478 Mass. 212, 227 (2017).

During the pendency of the case, the mother never requested any reasonable accommodations.  In the twenty months prior to

8

the mother's motion, three consecutive action plans had run their course without the mother bringing any request for accommodations or claim of inadequate services.  The department was aware of the mother's learning disability in March 2022. When the social worker asked for information about the mother's disabilities in September 2022, the mother never provided it. The mother never stated that she had difficulty understanding information conveyed by the social worker.  The judge found that the social worker nonetheless provided accommodations to the mother during meetings by simplifying and breaking down the mother's tasks for her, repeating information, allowing the mother to take notes, and permitting her representative payee to be present for support.  Furthermore, the mother never expressed any concern that the steps taken by the department to accommodate her disability were insufficient.

The department's "obligation to work with the mother was contingent upon her own obligation to fulfill various parental responsibilities, including seeking and utilizing appropriate services and maintaining regular contact with [the department] and [the child]."  Adoption of Serge, 52 Mass. App. Ct. 1, 9 (2001).  Between March 2022 and November 2022, the mother had minimal contact with the department and did not participate in any of the services offered in conjunction with her action plan. From April 2022 to September 2022, the mother repeatedly

9

declined the department's offers for visits with Indi to assess her parental capacity.  The mother refused four opportunities to acquire stable housing facilitated by the department, one of which could have led to swift reunification with Indi.  Given the department's significant efforts and the mother's lack of reciprocation or request for accommodation, we conclude that the judge did not err in determining that the department's efforts to reunify the mother with Indi were reasonable, notwithstanding her known disability.

3.  Adverse inferences drawn from the mother's absence at trial.  We are not persuaded by the mother's contention that the judge abused her discretion by drawing adverse inferences from the mother's absence from the trial.

"We review a trial judge's decision to draw an adverse inference from a parent's absence under the abuse of discretion standard."  Adoption of Helga, 97 Mass. App. Ct. 521, 526 (2020).  "Adverse inference [may] be drawn against a parent who, having notice of the proceedings, is absent from a child custody or termination proceeding without an adequate excuse."  Id. at 525.

On the first day of trial, the mother came to the courthouse but did not enter the courtroom.[4]  Her attorney told

_____

[4] The judge noted that the mother was only twenty to thirty feet outside the courtroom.

10

the judge that the mother did not feel that she could be present at trial because she did not think she could participate for emotional reasons, had "protective concerns about her own mental health," and wanted to leave. At the department's request, the judge drew a negative inference from the mother's absence. On the second day of trial, the mother's attorney asked the judge to reverse the previous day's adverse inference, stating that the mother had gone to the emergency room due to a panic attack and that the mother's absence on the second day was out of concern that "the emotional trauma that she was feeling yesterday would only be reignited." The judge denied the request to reverse the inference and also drew an adverse inference from the mother's absence on the second and third days of trial.

We agree with the judge's determination that the mother did not provide any adequate excuse for her absences. See Adoption of Helga, 97 Mass. App. Ct. at 526. Although the judge invited the mother's attorney to offer evidence of the mother's medical excuse through witnesses or certified records, no admissible evidence was ever introduced besides brief testimony that the mother was observed yelling and crying in the courthouse hallway. Moreover, at the start of each day of trial the judge reiterated the court's willingness to provide the mother reasonable accommodations to enable her participation, and on

11

the first day of trial the judge invited the mother's attorney to "text [the mother] periodically to ask her if she's changed her position" about participating.  The judge did not abuse her discretion in drawing the adverse inferences.

4.  <u>Termination of parental rights</u>.  The mother challenges the judge's finding that her unfitness was likely to continue into the future, arguing that the mother's past conduct was no longer probative of future unfitness due to her "great strides" in the months before trial and that termination of her parental rights was "not necessarily in [Indi's] best interests," because her recent "accomplishments bode well for Mother's continued improvements in the best interests of Child."  We are not persuaded.

"In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child."  <u>Adoption of Ilona</u>, 459 Mass. at 59.  Recognizing that termination of parental rights is an "extreme step, a judge must decide both whether the parent is currently unfit and whether, on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary" (quotations and citations omitted).  <u>Id</u>.

12

On review, "we must determine whether the trial judge abused [her] discretion or committed a clear error of law." Adoption of Elena, 446 Mass. 24, 30 (2006). The judge's fitness determination must be supported by "specific and detailed" findings that demonstrate parental unfitness by clear and convincing evidence. Custody of Eleanor, 414 Mass. 795, 799 (1993).

In support of her argument, the mother points to her reengagement with her action plan, including attaining housing in November 2023, reengaging with programs and a recovery coach, and having positive visits with Indi. Although the judge acknowledged the mother's reengagement with services, the judge found it "concerning" that the mother waited until two months before trial. The judge found that the mother had twenty-two months (the entirety of Indi's life) to engage in services but "has been unable to meaningfully address the concerns of substance abuse, housing, mental health, domestic violence and overall stability."

The evidence shows that the mother failed to comply with nearly all aspects of her action plan. See Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) (inability to comply with action plans is relevant to determination of unfitness). During the pendency of the case, the mother was largely absent from Indi's life and

13

refused services -- including a housing placement that could have led to reunification and multiple housing shelter offers -- instead choosing to remain in an abusive relationship, engage in substance use, and live unhoused.  See Adoption of Vito, 431 Mass. 550, 555 (2000) (lack of adequate stable housing is relevant to fitness).

The evidence shows that the mother failed to consistently maintain her sobriety during this case, sporadically using cocaine or fentanyl throughout 2022 and testing positive for cocaine in May 2023.  See Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008) (evidence of drug misuse relevant to parent's ability to provide care).

The mother chose to maintain a significant relationship with the putative father, despite his history of physical and verbal abuse toward her and his history of providing her with drugs.  See Adoption of Mary, 414 Mass. 705, 711 (1993) (parent's decision to continue relationship with violent or abusive partner bears on fitness because it indicates inability to protect children from future abuse).

The mother had minimal contact with Indi since his birth. Despite the many opportunities afforded her by the department, the mother only attended seven in-person visits with Indi between April 2022 and trial in January 2024.  See Adoption of

14

Darla, 56 Mass. App. Ct. 519, 522 (2002) (failure to visit child is relevant to finding of parental unfitness).

The judge found that the mother admitted that she was unable to parent her three older children and that her parental rights to those children had been terminated. The judge noted that "[t]he same issues regarding Mother's parenting abilities continue to date with respect to Indi." See Adoption of Jacques, 82 Mass. App. Ct. at 607 (prior history of unfitness has prognostic value). "[A] judge may rely upon a parent's past conduct with regard to older children to support a finding of current unfitness as to a different child, so long as that evidence is not the sole basis for the judge's unfitness determination." Adoption of Luc, 484 Mass. 139, 145 (2020).

Indi has been separated from the mother for his entire life, has no emotional attachment to the mother, and has formed a significant emotional attachment to his preadoptive parents, with whom he had lived for almost a year at the time of trial. See Adoption of Frederick, 405 Mass. 1, 7 (1989) ("a lengthy separation between parent and child, the growth of emotional ties between the child and a different custodian, and the effect of a forced return of the child to the biological parents are all factors that should be weighed by the judge").

The evidence supported the judge's conclusion that the mother's "continued lack of progress is a strong indicator that

15

her shortcomings will continue undiminished into the future with an attendant harmful effect on [the child]."  "Even if a parent engages in some of the services offered by the department, mere participation in the services does not render a parent fit without evidence of appreciable improvement in [the parent's] ability to meet the needs of the child[]" (quotation and citation omitted).  Adoption of Breck, 105 Mass. App. Ct. 652, 660 (2025).  Though a judge may consider evidence that a parent will correct a condition or weakness that currently impedes their ability to serve the child's best interests, the conclusion that unfitness is temporary requires more than a "faint hope" that the parent will become fit (citation omitted).  Adoption of Ilona, 459 Mass. at 59.  The record here amply supported the judge's conclusion that the mother's unfitness was not temporary despite the small improvements made by the mother just before trial and that terminating the mother's parental rights served Indi's best interests.  The judge did not err or abuse her discretion in finding that termination of parental rights was in Indi's best interests.  See Adoption of Ilona, supra at 59 ("We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child").

5.  Motion to continue.  The mother challenges the judge's denial of her motion to continue the trial.  In that motion, the

16

mother claimed that the department knew of her cognitive disability since the inception of the case and that the department's management of the case violated both the ADA and the department's own disability policy, thereby demonstrating a failure to provide reasonable efforts. The mother sought a continuance to give her the opportunity to benefit from appropriate disability accommodations.

"Whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and [the] decision will be upheld absent an abuse of that discretion." Care & Protection of Quinn, 54 Mass. App. Ct. 117, 120 (2002). We discern no abuse of discretion in the judge's denial of the motion to continue, particularly where the case had been pending for almost two years and the child was in a preadoptive placement. See Adoption of Ursa, 103 Mass. 558, 569 (2023) (judge properly denied mother's motion to continue where case was three years old and harm of delays "is unfortunately suffered principally by the children" [citation omitted]).

6. Denial of posttrial motions.[5] The mother contends that the trial judge abused her discretion by denying her motion for

---

[5] The mother included the denial of her motion to stay assembly of the record in her notice of appeal, but the mother's brief does not address it. Therefore, we do not address it here. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

17

a new trial or to reopen the evidence pursuant to Mass. R. Civ. P. 60 (b) (1), (2), (6), 365 Mass. 828 (1974).[6]  We disagree.

We review a judge's denial of a rule 60 (b) (6) motion for abuse of discretion.  Adoption of Gillian, 63 Mass. App. Ct. 398, 411 (2005).  "In considering a motion under rule 60 (b) (6), a judge may consider whether the moving party has a meritorious claim, whether extraordinary circumstances warrant relief, and whether the substantial rights of the parties in the matter in controversy will be affected by granting the motion" (quotations and citations omitted).  Parrell v. Keenan, 389 Mass. 809, 815 (1983).  Where, as here, the "motion judge and the trial judge were one and the same," we recognize that the judge may rely on her knowledge of the trial proceedings and we therefore extend her decisions a "special deference."  Commonwealth v. DeJesus, 71 Mass. App. Ct. 799, 811 (2008).

---

[6] "We look to rule 60 (b) by analogy and as a cogent standard because the Massachusetts Rules of Civil Procedure do not apply to proceedings to dispense with consent to adoption."  Adoption of Rory, 80 Mass. App. Ct. 454, 455 n.3 (2011).

Although the mother cited to Mass. R. Civ. P. 60 (b) (1) and (2) in her motion, she did not make any specific arguments pursuant to these sections.

18

In her "motion to reopen the trial and/or for a new trial,"[7] the mother advanced essentially two arguments.  First, the mother claimed that the combination of the department's late disclosure of the mother's 2018 neuropsychological evaluation and the trial judge's denial of the motion to continue violated the mother's right to due process by depriving trial counsel of adequate time to prepare the mother's defense to termination of parental rights.  The record, however, shows that on October 2, 2023, trial counsel told the court that she had received the department's complete file and reviewed it in preparing the mother's witness and exhibit lists.  Furthermore, counsel received the evaluation on December 4, 2023, more than six weeks before trial commenced on January 16, 2024.[8]  We discern no error here.

Second, the mother argued that a new affidavit from a housing specialist could correct the court's mistaken impression that the mother made false representations to obtain her apartment.  In denying the motion, the judge stated that the housing issue was only "one small component" and that her

---

[7] We note that our review of the January 2025 ruling on the posttrial motions is limited by a five-minute gap in the transcript, through no fault of the mother.

[8] Although the judge denied the mother's motion to continue the trial from December 16, 2023, the judge nevertheless continued the trial to January 16, 2024, to give the department time to draft an open adoption agreement.

findings mention one statement about the mother being dishonest "[b]ut, there were so many other issues."  There was no abuse of discretion.  See Adoption of Gillian, 63 Mass. App. Ct. at 411-412 (no abuse of discretion in denying rule 60 (b) motion where the numerous bases for termination persisted after trial).  Additionally, the disputed finding concerning the mother's dishonest representation came from the testimony of a social worker whom the judge found credible.  The mother had a fair opportunity to rebut that evidence at trial.

Accordingly, we discern no abuse of discretion in the judge's denial of the motion to reopen the trial as the mother has failed to show that the motions were meritorious or presented any extraordinary circumstances warranting relief. Parrell, 389 Mass. at 815.

Decree affirmed.

By the Court (Henry, Sacks & Tan, JJ.[9]),

Clerk

Entered:  January 21, 2026.

---

[9] The panelists are listed in order of seniority.