The defendant, Francis Morales, appeals from his convictions, by a Superior Court jury, of larceny from a person in violation of G. L. c. 266, § 25 (b ), and conspiracy to commit armed robbery in violation of G. L. c. 274, § 7. On appeal, the defendant contends that the trial judge erred in his instructions to the jury regarding the evaluation of eyewitness identification testimony, and that the evidence supporting his identity as the perpetrator was insufficient to support the convictions. We affirm.
1. Jury instructions. The defendant contends, for the first time on appeal, that the jury instructions on eyewitness identification, requested by the defendant and given by the judge, gave insufficient guidance to the jury to evaluate the victim's identification testimony. Where, as here, "the defendant did not object to the jury instruction[s] at trial, we review his claim[s] to determine first whether there was error, and if so, we then inquire whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Marinho, 464 Mass. 115, 122 (2013).
The trial judge accepted the defendant's proposed instructions, with modifications to which the defendant agreed, and instructed the jury in accordance with Commonwealth v. Crayton, 470 Mass. 228 (2014). See Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051, 1057-1058 (2015). The defendant points out that the victim's eyewitness identification of the defendant at trial was inconsistent with his previous statements to the police,[2] and contends that the model instructions were inadequate to guide the jury's deliberations.
Where, as here, "the reliability of a positive eyewitness identification is an important issue at trial," the trial judge properly "instruct[ed] the jury regarding the evaluation of eyewitness identification testimony, including the possibility of a good faith error in identification." Commonwealth v. Franklin, 465 Mass. 895, 910 (2013). The instruction informed the jury of the factors they should consider. The trial judge appropriately instructed the jury to consider the credibility of each witness who made an identification and to consider whether the witness could have been mistaken in the identification. See id. The judge cautioned the jury that a witness's degree of certainty is not in itself, a measure of its accuracy, see Commonwealth v. Gomes, 470 Mass. 352, 369-372 (2015), and directed the jury to consider whether the witness "ever failed" to identify the defendant or made any identifications inconsistent with the witness's testimony at trial. See id. at 388.
The defendant further contends that the trial judge should have supplemented the instructions with a specific (although undefined) "earwitness" instruction. The instructions regarding identification adequately conveyed to the jury all of the factors needed to evaluate the credibility of each witness and the accuracy of any eyewitness or "earwitness" identifications. "The factors provided for the jury's consideration in assessing eyewitness testimony -- including the capacity and opportunity of the witness for observation, the timing of the identification, conditions at the scene, past contact between the witness and the defendant, and any failed or inconsistent identifications -- are applicable to assessing 'earwitness' testimony as well." Commonwealth v. Cruz, 445 Mass. 589, 596 (2005). The judge here instructed the jury that they could consider "what the witness claims to have seen or heard or felt with his or her own senses." There was no error.[3]
2. Sufficiency of the evidence. The defendant claims error in the trial judge's denial of his motions for a required finding of not guilty because, he contends, the identification evidence was inherently contradictory and unreliable. We ask whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). Commonwealth v. Williams, 54 Mass. App. Ct. 236, 245 (2002).
The defendant's contentions run to the weight of the evidence and the credibility of the witnesses, assessments which fall within the province of the jury. See Commonwealth v. Sylvia, 456 Mass. 182, 190-191 (2010) ; Cruz, 445 Mass. at 596. The defendant was known to the victim, who had had previous contact and conversations with the defendant. He described the defendant as having a unique voice. The jury heard the 911 recording of the victim's initial identification of the defendant, and heard the testimony of the responding police officer and investigating detective regarding the victim's eyewitness and "earwitness" identification of the defendant. The voice identification was consistent throughout, and sufficient to support the conviction. See Cruz, 445 Mass. at 593, quoting Commonwealth v. Mezzanotti, 26 Mass. App. Ct. 522, 527 (1988) ("a voice identification may be considered by a jury as long as the witness expresses some basic familiarity with the voice he or she claims to identify").
The victim's initial statements regarding who he saw were made in the immediate aftermath of the assault; the statement at the hospital was made while the victim was medicated. It was for the jury to decide whether the victim was under stress or in a medicated state when he first talked to the police, or whether he simply "improved" his eyewitness identification on retelling. The Commonwealth's evidence was sufficient to prove identity, and the trial judge properly denied the defendant's motions for a required finding of not guilty.
Judgments affirmed.

The victim first identified the defendant as his assailant to the 911 operator, stating that he did not see his assailant in the dark but recognized his voice. He told the responding police officer and the detective who interviewed him at the hospital later that morning that he did not see his assailant, but recognized his voice as the defendant's. He was acquainted with the defendant and described his voice as a "deep, harsh-y voice," accented, and "[v]ery distinctive." The victim then testified at trial that although he first identified the defendant by his voice in the dark, he was also able to visually identify the defendant by the light of the "[v]ery bright" screen of the "50-inch HD/LED" television that he keeps on "[t]wenty-four hours a day." Defense counsel cross-examined the victim at length about his identification of the defendant and whether it was based on voice or visual recognition. He argued in his closing that the victim's testimony identifying the defendant was essentially mistaken, unreliable, and contradicted by his prior contemporaneous statements to the 911 operator and the police.

For the same reasons, even if there were an error, which there was not, there is no substantial risk of a miscarriage of justice. See Marinho, 464 Mass. at 122.