NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-732

COMMONWEALTH

vs.

STEPHANIE A. FERNANDES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2022, after a jury trial, the defendant was convicted of voluntary manslaughter for killing the victim, Andrew Wagner.[1] She was sentenced to serve eight to ten years in State prison. On appeal, she claims, inter alia, that (1) the judge erred in failing to instruct the jury on the Commonwealth's burden to disprove accident; (2) several aspects of the Commonwealth's expert's testimony were inadmissible; (3) evidence of the defendant's prior bad acts was admitted for the impermissible purpose of proving character traits of violence and

---

[1] The Supreme Judicial Court previously considered whether the integrity of the grand jury process was impaired and concluded that it was not.  Commonwealth v. Fernandes, 483 Mass. 1, 16 (2019).

untruthfulness; and (4) the Commonwealth's closing argument lacked a sufficient factual basis and reiterated inadmissible evidence.  We affirm.

Discussion.  1.  Accident instruction.  First, the defendant claims that the judge erred in failing to instruct the jury on the Commonwealth's burden to disprove accident.  We disagree.

"Voluntary manslaughter and an accidental killing are mutually exclusive concepts in the criminal law of homicide." Commonwealth v. Squailia, 429 Mass. 101, 109 (1999).  This is because "voluntary manslaughter is an intentional killing, which is mitigated by extenuating circumstances," while "[a]n accidental killing is, by definition, an unintentional killing, and as such is excused by law."  Id.  "When the issue of accident is 'fairly raised,' the judge, at least on request, must instruct the jury that the Commonwealth must disprove accident beyond a reasonable doubt."  Commonwealth v. Podkowka, 445 Mass. 692, 699 (2006).  "Where there is no evidence of accident, the issue is not fairly raised and the judge need not give an accident instruction."  Id.  "When analyzing whether a judge erred in declining to give an accident instruction, a reviewing court considers the evidence in the light most favorable to the defendant."  Commonwealth v. Lugo, 482 Mass. 94, 102 (2019).

2

Here, in relevant part, the defendant testified to the following:  after the victim attacked her, she ran into the kitchen, picked up a knife, and held it in front of her; the defendant "didn't even move" as the victim ran to her saying, "[g]ive me the knife, you fucking bitch"; she felt "frozen" when the victim reached her, at which point the victim put his hand on her throat, grabbed her hand, and subsequently said, "I think I got stabbed"; and following the stabbing, the defendant claimed that she was "in shock" and felt "confused" because the events occurred "so quick."

The defendant did not testify that the stabbing occurred accidentally during a struggle over the knife.  Contrast Commonwealth v. Zezima, 387 Mass. 748, 750 (1982) ("According to the defendant, as [the deceased] attempted to take the gun from him, it discharged several times, killing [the deceased]"); Commonwealth v. Power-Koch, 69 Mass. App. Ct. 735, 736 (2007) (during police interview, defendant claimed "by accident I shot my friend in the chest").  To the contrary, the defendant denied having testified that the defendant "fell onto the knife," and stated that she "d[id]n't know what happened" during the encounter.  The record is devoid of evidence of the events that took place between the time that the victim allegedly grabbed the defendant's hand and the time of the stabbing.  Accordingly, even viewing the evidence in the light most favorable to the

3

defendant, it did not fairly raise the issue of accident.  The judge did not err in declining to instruct the jury on the Commonwealth's burden to disprove it.

2.  Expert testimony.  The defendant raises five arguments for the first time on appeal regarding the expert testimony offered by Dr. David Adams, a licensed psychologist called by the Commonwealth.  Where there was no timely objection, "our review is limited to whether any error created a substantial risk of a miscarriage of justice."  Commonwealth v. Henley, 488 Mass. 95, 127 (2021).

a.  Opinion that the defendant was not a victim of domestic violence.  The defendant claims that Dr. Adams improperly opined on the defendant's credibility.  See Commonwealth v. Quinn, 469 Mass. 641, 646 (2014) ("No witness, neither a lay witness nor an expert, may offer an opinion regarding the credibility of another witness").  Specifically, the defendant contends that Dr. Adams's testimony that "[the defendant] was not a victim of domestic violence" and "did not fit the profile or the experience of a battered woman" amounted to an opinion that her claims of abuse were false.

> "While an expert may describe the general behavioral
> characteristics shared by victims of abuse, deference must
> be preserved for the role of the jury as the final judge of
> credibility.  Expert testimony must be confined to a
> description of the general or expected characteristics
> shared by typical victims, and may not relate directly to
> the symptoms exhibited by an individual victim . . ., nor

4

may it include an opinion or diagnosis that that person suffers from the described condition" (quotation, citation and alteration omitted).

Commonwealth v. Morris, 82 Mass. App. Ct. 427, 433 (2012).

Although Dr. Adams improperly opined that the defendant did not suffer from intimate partner violence, the defendant's expert, Dr. Carol Ball, likewise exceeded the scope of permissible expert testimony -- i.e., the general characteristics shared by typical victims of intimate partner violence -- by stating, "[m]y opinion is that [the defendant] experiences the symptoms of battered women's syndrome, also known as intimate partner violence." See Morris, 82 Mass. App. Ct. at 433. In light of Dr. Ball's equally impermissible opinion, we have no serious doubt whether Dr. Adams's opinion changed the outcome of the trial. See Commonwealth v. Valentin, 470 Mass. 186, 189 (2014). See also Commonwealth v. Randolph, 438 Mass. 290, 297 (2002) ("Errors of this magnitude are extraordinary events and relief is seldom granted"). Accordingly, this error did not create a substantial risk of miscarriage of justice. See Valentin, supra.

b. Opinion that the victim was a victim of domestic violence. Next, the defendant claims that Dr. Adams's testimony that "[the victim] was a victim of intimate partner violence, coercively controlled and fearful," amounted to an opinion of

5

the defendant's guilt.[2]  For the reasons discussed, supra, Dr.

Adams's opinion exceeded the bounds of permissible expert

testimony, see Morris, 82 Mass. App. Ct. at 433, but did not

create a substantial risk of a miscarriage of justice in light

of Dr. Ball's improper opinion.  See Valentin, 470 Mass. at 189.

Moreover, Dr. Adams did not improperly testify that he believed

the defendant was lying.  To the contrary, and by way of

example, in reference to whether the defendant had visible

bruises, Dr. Adams testified that he did not "claim to know the

truth," and that it was not his job "to believe or not believe"

the defendant's claims of abuse.

    c.  References to the defendant's fits of rage.  Next, the

defendant claims that Dr. Adams improperly testified to prior

incidents involving the defendant's "rage," which amounted to

inadmissible propensity evidence.[3]

---

[2] Contrary to the defendant's assertion, Dr. Adams merely opined on the nature of the relationship between the victim and defendant, based on his review of phone records, police reports and interviews, grand jury minutes, and Dr. Ball's evaluation of the defendant.  In doing so, Dr. Adams did not imply that the defendant "necessarily was the perpetrator."  Rather, he clarified that "domestic violence isn't indicated by just isolated events of violence. . . .  [It] is a pattern of coercive control."

[3] In relevant part, Dr. Adams testified:  (1) that the defendant "sometimes rag[ed] at [the victim] for not coming home right away [after work]"; (2) "there was lots of incidents where [the defendant] was raging at [the victim]"; (3) "there were just frequent . . . rages at both [the victim and another intimate partner, Michael Laramee]"; (4) "I saw lots of evidence

6

"While evidence of the defendant's prior bad acts is not admissible to show bad character or propensity to commit a crime, . . . such evidence is admissible if relevant to show the defendant's motive, intent, or state of mind" (citation omitted). Commonwealth v. Gonzalez, 469 Mass. 410, 420 (2014). However, "[t]he judge also must find that the probative value of the evidence in question outweighs undue prejudice to the defendant." Id. at 420-421. "Whether evidence of prior bad acts is relevant, and whether the probative value of such evidence is outweighed by its potential for unfair prejudice, are determinations committed to the sound discretion of the trial judge and will not be disturbed by a reviewing court absent 'palpable error'" (citation omitted). Commonwealth v. Rosario, 460 Mass. 181, 192-193 (2011).

Here, the defendant's claims of self-defense and intimate partner violence placed the nature of her relationship with the victim, as well as her state of mind at the time of the stabbing, directly at issue. See Commonwealth v. Pike, 428 Mass. 393, 396 (1998), quoting Commonwealth v. Harrington, 379

---

in the interviews of witnesses, neighbors about incidents in which [the defendant] had displayed explosive rage"; (5) "I thought there was really quite a compelling history of [the defendant's] explosive rage towards other people"; (6) that there was an incident in which the defendant, who was a passenger in a car driven by the victim, "raged" at another driver; and (7) "there were a lot of incidents where [the defendant was] raging at [the victim]."

Mass. 446, 450 (1980) (to establish self-defense with deadly force, "the defendant [must have] reasonably and actually believed that [s]he was in 'imminent danger of death or serious bodily harm, from which [s]he could save [her]self only by using deadly force'"); Commonwealth v. Goetzendanner, 42 Mass. App. Ct. 637 (1997), quoting G. L. c. 233, § 23F ("expert testimony concerning [battered women's syndrome] . . . may [b]e used to establish 'the reasonableness of the defendant's apprehension that death or serious bodily injury was imminent'").  Dr. Adams testified to the defendant's "compelling history of . . . explosive rage" not for the purpose of establishing the defendant's propensity for violence, but because he considered it in forming his opinion about the nature of her relationship with the victim.  This, in turn, was relevant to the defendant's state of mind at the time of the stabbing.  See Goetzendanner, supra.

Moreover, during his final charge, the judge provided a clear limiting instruction regarding the permissible uses of prior bad acts evidence, which mitigated the risk of undue prejudice to the defendant.[4]  We presume that the jury followed

_____

[4] The defendant contends that the judge's final instructions were inadequate for two reasons:  (1) they "endorsed the use of propensity evidence"; and (2) they provided nothing other than a "bland, nonspecific" instruction when a "more pointed, forceful, and timely" directive was required, Commonwealth v. Demars, 42 Mass. App. Ct. 788, 791 (1997).  We disagree on both points.

this instruction.  See Commonwealth v. Bryant, 482 Mass. 731, 737 (2019).  Where the prior bad acts evidence was highly probative for nonpropensity purposes, "and the chance of prejudice was minimized by a specific limiting instruction, we cannot say on the record before us that the judge's decision to admit the testimony was in palpable error."  Commonwealth v. Dunn, 407 Mass. 798, 807 (1990).  As there was no error, the admission of this evidence did not cause justice to miscarry.

d.  Hearsay.  Next, the defendant claims that Dr. Adams, on direct examination, testified to inadmissible hearsay that violated the confrontation clause of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[5]  See Commonwealth v. McNickles, 434 Mass.

---

First, the judge emphasized that the jury "may not use [prior bad acts] evidence as proof that [the defendant] is a person of bad character with a propensity to commit criminal acts."

Second, the instructions were not "bland" or "nonspecific" like those in Demars, supra at 790, where the judge merely instructed, "if you heard arguments about facts that were not in evidence, you are to disregard that."  Here, dissimilarly, the instructions explicitly referred to the defendant's "prior bad acts," including "evidence of incidents that occurred during [the defendant's] relationships with Michael Laramee and [the victim]."

[5] Specifically, the defendant takes issue with four aspects of Dr. Adams's testimony:  (1) that the defendant "smashed the windshield of [another] person's vehicle"; (2) that the defendant "raged in her [neighbor's] face"; (3) that the defendant "smashed a light bulb in the [victim's] eye on a cruise ship"; and (4) that "according to Mr. Laramee, [the

9

839, 857 (2001) ("an expert witness may not, on direct examination, present the specifics of hearsay information on which she has relied in reaching her opinion").  We need not conduct a hearsay analysis for each of the statements described in note 5, supra, as such statements, even if inadmissible, were cumulative of other properly admitted evidence of the defendant's "fits of rage."[6]  Therefore, any error would not have created a substantial risk of a miscarriage of justice.  See

_____

defendant] said that sometimes she feels like [s]he could stab somebody."

We note that the defendant did not object to any of the above testimony.  The defendant objected only to Dr. Adams's testimony regarding the defendant's alleged prior conviction of malicious destruction of property, and an e-mail or text message exchange in which the defendant allegedly "rag[ed]" at her landlord.

[6] Laramee testified that, after the defendant returned from being away for several days on what he believed to be a heroin binge with her ex-husband, Laramee said to the defendant, "cut the bullshit.  You're going to lose your kid," which caused the defendant to become "[e]xtremely angry" and "thr[ow] a remote at [Laramee's] head."  Laramee further alleged that, after forbidding the defendant from leaving the house with his truck, "[s]he grabbed a knife" and "stabbed [a] dining room chair."

Laramee also testified that, on a separate occasion, he and the defendant had gotten into an argument, during which he "heard a ching of a knife coming out of the butcher block," so he entered the kitchen, "hit [the knife] out of [the defendant's] hand," and "threw her on the ground and had her on the floor by her neck."  In response, the defendant allegedly "took [Laramee's] thumb and bent it backwards, dislocat[ing] it."

As discussed, infra, we disagree with the defendant's arguments against the admissibility of Laramee's testimony.

10

Commonwealth v. Avila, 454 Mass. 744, 763 (2009) (applying substantial likelihood standard).

e. Scientific foundation. Next, the defendant claims that Dr. Adams's opinion lacked a sufficient scientific foundation. This argument is waived, as the defendant did not raise it below. Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 694 (2015), S.C., 90 Mass. App. Ct. 227 (2016). See Commonwealth v. Wilkerson, 486 Mass. 159, 172 (2020) ("Where a defendant does not request a Daubert-Lanigan hearing to challenge the general scientific reliability of the methodology prior to trial, the issue is waived on appeal").

3. Miscellaneous character evidence claims. a. The defendant's occupation. The defendant claims that the Commonwealth improperly insinuated the defendant's "dishonest and exploitative character" based on her prior occupation as a dancer at a Springfield strip club. Specifically, the defendant takes issue with two questions that the prosecutor posed on cross-examination to Danielle Lord, the defendant's former coworker: (1) "[A]s an exotic dancer, your role or your job to make money was to dance for men? . . . So you would agree that a stripper uses manipulation?"; and (2) "[W]hen you were an

exotic dancer, you didn't go under your legal name did you?

. . . You went under a stage name?"[7]

"As a general matter, trial attorneys are allowed to pursue vigorous cross-examination." Commonwealth v. Fahey, 99 Mass. App. Ct. 304, 309 (2021).

> "[T]he fact that a question may be degrading is not, by itself, a barrier to its utterance. If the examiner reasonably believes that the answer will shed light on the credibility of the witness, or that the answer will aid the jury's exploration of a material fact, then a question's degrading content is simply a factor . . . in determining whether the anticipated answer's probative value is substantially outweighed by any unfair prejudice the question will likely produce."

Commonwealth v. Murphy, 57 Mass. App. Ct. 586, 590 (2003).

On appeal, "[w]e review a judge's evidentiary rulings for an abuse of discretion." Commonwealth v. Andre, 484 Mass. 403, 414 (2020). "We will conclude that there has been an abuse of discretion only if the judge has 'made "a clear error of judgment in weighing" the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives.'" Commonwealth v. Hammond, 477 Mass.

_____

[7] The defendant cites to Commonwealth v. Kozec, 399 Mass. 514, 525 (1987), for the proposition that the prosecutor's questions to Lord "had no purpose other than showing that both [the defendant] and the witness . . . were shameless women engaged in 'a form of exhibitionism with demeaning sexual overtones, in a sense evidence of the defendant's bad character.'" As discussed, infra, we need not decide whether the judge abused his discretion in allowing such questions, as any error was insufficiently prejudicial to require vacating the judgment.

12

499, 505 (2017), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). In particular, "[t]he determination whether the prejudicial effect of a statement outweighs its probative value 'rests in the sound discretion of the judge and will be upheld absent palpable error.'" Commonwealth v. Julien, 59 Mass. App. Ct. 679, 688 (2003), quoting Pike, 430 Mass. at 325.

With respect to the question about manipulation tactics, the defendant objected at trial, so we review for prejudicial error. Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). "This requires a two-part analysis: (1) was there error; and (2) if so, was that error prejudicial." Id. "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect.'" Id., quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Even if the judge erred in allowing this question, which we need not decide, such error did not prejudice the defendant. The defendant's occupation was already in evidence when the prosecutor asked the question, contrast Commonwealth v. Kozec, 399 Mass. 514, 525 (1987) (no evidence of defendant's employment as "jello wrestler" before witness gave inadmissible testimony); the testimony was brief and not repeated in closing; and Lord denied that the defendant was a manipulator.

With respect to the question about Lord's use of a stage name, the defendant did not object at trial, so we review for

13

whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. McGann, 484 Mass. 312, 322 (2020).  Again, we need not inquire into the question's propriety, as any error would not have created a substantial risk of a miscarriage of justice.  We are not persuaded that the testimony was sufficiently significant in the context of the trial to materially influence the verdict, where the testimony (1) addressed only Lord's use of a stage name, and did not discuss the defendant; and (2) was brief and not repeated in closing.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

b.  Cross-examination by innuendo.  Next, the defendant claims that the Commonwealth improperly cross-examined Lord by innuendo by asking whether the defendant's tendency to "go missing for days" might have been caused by substance abuse, as the question "had no basis in the evidence."  See Commonwealth v. Wynter, 55 Mass. App. Ct. 337, 337 (2002), citing Commonwealth v. Fordham, 417 Mass. 10, 20 (1994) ("it is error for a prosecutor to communicate impressions by innuendo through patterned and leading questions with no demonstrated evidentiary or good faith basis, which are crafted to evoke negative and prejudicial answers leaving nothing more or less than the unsubstantiated innuendo").

There was no error, as we cannot say that the prosecutor's question had no "mooring in evidence."  Wynter, 55 Mass. App.

14

Ct. at 339. The defendant's history of substance abuse was in evidence.[8] Moreover, that defense counsel did not object is further indication that the questions did not convey improper innuendo as the defendant now claims. Commonwealth v. Alemany, 488 Mass. 499, 512 (2021).

c. The defendant's character for truthfulness. Next, the defendant claims that the prosecutor improperly impeached the defendant's credibility with "evidence of false statements in unrelated matters" by asking whether she lied (1) to her boyfriend's mother about her occupation; and (2) in an affidavit filed in connection with a 2007 restraining order.

"The general rule . . . is that a party may impeach a witness by attacking the witness's character for truthfulness, but only through general reputation evidence, or evidence of a witness's prior criminal convictions in conformity with the requirements of G. L. c. 233, § 21." Commonwealth v. Almonte, 465 Mass. 224, 241 (2013). That is to say, "specific instances of misconduct showing the witness to be untruthful are not admissible for the purpose of attacking . . . the witness's credibility" (citation omitted). Commonwealth v. Lopes, 478 Mass. 593, 606 (2018).

---

[8] Laramee testified that, between 2004 and 2006, the defendant used "[p]ills, cocaine . . . [and] [e]ventually . . . heroin," and that he stopped talking to the defendant in 2006 "when she went to rehab" in order to address her addiction.

15

We agree that the above questions were improper; neither was relevant other than to undermine the defendant's character for truthfulness.  Because the defendant did not object to either question, we review for whether they created a substantial risk of a miscarriage of justice.  Alphas, 430 Mass. at 13.  In doing so,

> "[w]e review the evidence and the case as a whole.  We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision."

Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).

First, in assessing the significance of the errors in the context of the trial -- i.e., the relatively[9] increased likelihood that the jury might discredit the defendant's testimony -- we note that her testimony provided little detail regarding the circumstances of the stabbing.  The defendant did not describe the victim's and defendant's movements between the time that the victim allegedly grabbed the defendant's hand and neck and the time of the stabbing.  Moreover, the defendant explicitly testified that she "d[id]n't know what happened"

---

[9] The defendant's credibility was otherwise impeached through proper cross-examination.  As a representative example, the Commonwealth demonstrated inconsistencies between the alleged incident between the victim and defendant on July 4, 2010, and photographic evidence taken shortly thereafter.

16

during the encounter.  Therefore, the defendant's testimony, even if credited, was minimally probative of the following avenues through which the Commonwealth could disprove self-defense:  (1) the reasonableness of her belief of the immediacy of the danger of death or serious bodily harm; and (2) the defendant's use or attempt to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force.  See Commonwealth v. Toon, 55 Mass. App. Ct. 642, 652 (2002).

This, together with the strength of the Commonwealth's case, leads to our conclusion that the questions did not create a substantial risk of a miscarriage of justice.  In particular, the Commonwealth's arterial spray evidence strongly suggested that the defendant stabbed the victim from either the side or behind, undercutting the defendant's self-defense claim.[10]

---

[10] The Commonwealth's expert medical examiner, Dr. Andrew Elin, testified that the blood from the victim's neck wound would have sprayed "in vaguely a forward direction."  The defendant's neighbor testified that when the defendant came to the neighbor's door seeking help, she did not see any blood on the defendant.  The defendant's expert forensic scientist, Stuart James, testified that he "did see an arterial squirt pattern [on the defendant's shirt], but [was] not sure when and where that got there . . . it certainly occurred when they were face to face."  However, on cross-examination, James testified that he relied only on "the bloodstain evidence at the scene and the bloodstain evidence on the various physical evidence objects"; he did not consider the testimony of the defendant's neighbor, including that the defendant "pounced on" the victim while he was lying in the bathroom, bleeding out, in a pool of his own blood.

17

d.  The defendant's past drug use.  Next, the defendant claims that the prosecutor improperly questioned Laramee and Renee Johnson, the defendant's sister, about the defendant's past drug use, which had no relevant purpose other than to undermine the defendant's character.  As the defendant did not object, we review for whether any error created a substantial risk of a miscarriage of justice.  Alphas, 430 Mass. at 13.  We discern no error.

Defense counsel's cross-examination of Laramee opened the door to the information elicited from Laramee and Johnson.[11]  See Commonwealth v. Otsuki, 411 Mass. 218, 236 (1991).  "For this reason, the defendant's claim of prejudice is highly suspect.  Even assuming, however, that the testimony prejudiced the defendant in some manner, such prejudice did not create a substantial risk of a miscarriage of justice in this case."  Id. Laramee's and Johnson's testimony was cumulative of other properly admitted evidence of the defendant's history of drug use.

e.  The November 18, 2003, theft report.  Next, the defendant claims that the prosecutor improperly asked the

_____

[11] Laramee testified on cross-examination that the defendant had left him in 2006 to go to a rehabilitation facility. Johnson took the defendant to the facility on that occasion. Additionally, Laramee testified that the defendant was addicted to pain medication, and that the use of cocaine was part of the relationship between him and the defendant.

18

defendant whether she recalled that, on November 18, 2003, Brandon Fernandes, the defendant's ex-husband, "call[ed] the police on [her] for going into his apartment and taking items from him." Specifically, the defendant contends that "th[is] bald allegation was hearsay," and, citing to Commonwealth v. Dew, 443 Mass. 620, 628 (2005), "such allegations not resulting in conviction . . . are inadmissible." At trial, the defendant objected to this line of questioning on relevancy grounds. "As the grounds . . . raised on appeal differ from the objection made at trial, the standard of review that applies to this claim is whether there was a substantial [risk] of a miscarriage of justice." Commonwealth v. Almeida, 479 Mass. 562, 568 (2018).

We need not decide the question's propriety, as any error did not create a substantial risk of a miscarriage of justice, where such evidence was cumulative of Lord's testimony that the defendant "stole my belongings from her ex -- from her apartment that her and her ex-husband shared." See Commonwealth v. Ortiz, 487 Mass. 602, 611 (2021).

f. The defendant's loyalty. Next, the defendant claims that the prosecutor improperly asked the defendant about her loyalty to the victim and Laramee for the purpose of "denigrat[ing]" the defendant's character as "promiscuous."[12]

_____

[12] The prosecutor asked the defendant, "Now, were you loyal to [the victim] when you cheated on him with [Laramee]? . . .

19

The defendant did not object, so we review for whether any error created a substantial risk of a miscarriage of justice. Alphas, 430 Mass. at 13.

The defendant testified that she had told police on the night of the stabbing that she was loyal to the victim. Contrary to the defendant's assertion, the prosecutor's line of questioning was permissible for the purpose of impeaching the defendant's credibility. See Commonwealth v. Dabney, 478 Mass. 839, 859, cert. denied, 586 U.S. 846 (2018) ("A witness generally may be impeached by contradiction with [1] the witness's own prior, inconsistent statement; [2] internal inconsistency in the witness's testimony; or [3] other conflicting evidence"). We discern no error, let alone one creating a substantial risk of a miscarriage of justice.

g. Prior acts of aggression. Next, the defendant claims that the Commonwealth improperly questioned the defendant and Laramee about "prior acts of aggression" by the defendant for the purpose of establishing the defendant's propensity for violence.[13]

---

And were you loyal to [Laramee] when you were cheating on him with [the victim]?"

[13] Specifically, the defendant takes issue with the following: (1) the prosecutor's question to the defendant whether, in 2003, Brandon Fernandes "called the police on [her] for slapping him"; (2) Laramee's testimony that the defendant "stabbed [his] dining room chair" with a knife; (3) Laramee's

20

Even if prior bad act evidence is admissible to show the defendant's motive, intent, or state of mind, "the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 401 (2022), quoting Bryant, 482 Mass. at 734-735. The evaluation of evidence, both for its relevance and its prejudicial impact, is committed to the sound discretion of the trial judge and will not be disturbed absent palpable error. Rosario, 460 Mass. at 192-193.

As discussed, supra, the defendant claimed to be a victim of intimate partner violence in support of her theory of self-defense. We do not discern palpable error in the judge's determination that the aforementioned testimony was "relevant to [the defendant's] reaction in domestic relationships, which [wa]s at the heart of the defense raised," as well as to her "awareness of intimate partner violence, her ability to extract herself from it, to call police, to reach out to authorities, [and] to react to it." Nor do we discern palpable error in the judge's determination that the probative value of such testimony was not outweighed by its prejudicial impact, particularly in light of the judge's clear limiting instruction during his final

testimony that the defendant scratched his neck during an altercation; and (4) Laramee's testimony that, during a separate altercation, the defendant bent his thumb backwards, dislocating it.

21

charge.  The judge specified the limited purposes for which the prior bad acts evidence was admitted, and emphasized that the jury could not consider that evidence as proof that the defendant is a person of bad character with a propensity to commit criminal acts.  See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000) ("We presume that a jury understand and follow limiting instructions, . . . and that the application of such instructions ordinarily renders any potentially prejudicial evidence harmless").

h.  The nude photographs.  Next, the defendant claims that the judge erred in admitting nude and sexually explicit photographs of the defendant found on the victim's cell phone, which she contends "had zero 'informational value' . . . [and] simply tended to degrade [the defendant] before the jury."  The defendant objected to the introduction of such evidence, so we review for prejudicial error.  See Cruz, 445 Mass. at 591.

In light of the defendant's claims of self-defense and intimate partner violence, we discern no error in the judge's exercise of his broad discretion in determining that the photographs were relevant to the nature of the relationship between the victim and defendant, as well as to the frequency of the alleged domestic violence, given the lack of bruising or injuries displayed in the photographs.  See Commonwealth v. Pina, 430 Mass. 66, 78 (1999), quoting Commonwealth v. Tobin,

22

392 Mass. 604, 613 (1984) ("We accord a trial judge 'substantial discretion in deciding whether evidence is relevant, and whether the prejudicial implications of such evidence outweigh its probative value'").  "To the extent that there was a risk of unfair prejudice to the defendant, the judge provided a limiting instruction on this issue both at the time the evidence was admitted and during the final charge."  Commonwealth v. Samia, 492 Mass. 135, 149 (2023).  We presume that the jury followed the judge's limiting instructions.  Bryant, 482 Mass. at 737.

i.  The 2011 Las Vegas trip.  Next, the defendant claims that the Commonwealth asked the defendant three questions about her 2011 trip to Las Vegas for the sole purpose of degrading the defendant's character.  The defendant did not object to such questions, so we review for whether any error created a substantial risk of a miscarriage of justice.  Alphas, 430 Mass. at 13.

First, the defendant contends that the prosecutor improperly asked, "when you were in Vegas, you started sending [the victim] nude photographs of your vagina, isn't that correct?"  We disagree that the question was improper.  This question was within the scope of permissible cross-examination, as defense counsel raised the subject on direct examination. See Commonwealth v. Balboni, 89 Mass. App. Ct. 651, 662 (2016).

23

Second, the defendant contends that the prosecutor improperly insinuated the defendant's dishonesty and bad character in asking, "Vegas is known as Sin City, isn't that correct? . . . A lot of drinking, a lot of partying, isn't that correct?" We need not decide the propriety of these questions, as any error did not create a substantial risk of a miscarriage of justice. The resulting testimony was brief and not repeated in closing, and the defendant's answers merely addressed the general, public perception of Las Vegas.

Third, the defendant contends that the prosecutor exceeded the scope of permissible cross-examination in asking the defendant whether she "like[s] to masturbate," to which the defendant answered, "I can't have orgasms, to be honest."

The question was improper. "Trials are a search for truth, not socialized stonings." Commonwealth v. Murphy, 57 Mass. App. Ct. at 589. Where, as here, "it is 'extremely unlikely' that the prosecutor reasonably believed a helpful answer would be forthcoming, . . . or when the question's likely impact is simply to inflame or degrade, then the question goes 'beyond the bounds of proper cross-examination,' . . . and should not be asked." Id. at 590. That being said, the error did not create a substantial risk of a miscarriage of justice; the resulting testimony was innocuous, brief, and not repeated in closing.

24

j.  The alleged intrafamilial affair.  Next, the defendant claims that the prosecutor improperly cross-examined the defendant's sister, Renee Johnson, about an alleged affair between Johnson's mother and ex-boyfriend, which had no relevant purpose other than to "degrade [the defendant] by association." The defendant did not object, so we review for whether any error created a substantial risk of a miscarriage of justice.  See Alphas, 430 Mass. at 13.  We need not decide the propriety of the question, as any error did not create a substantial risk of a miscarriage of justice; the resulting testimony was brief, not repeated in closing, and did not involve the defendant.

4.  The Commonwealth's closing argument.  a.  Factual basis.  The defendant next claims that the Commonwealth, in its closing argument, made the following statement without a sufficient factual basis:  "This case is about the defendant . . . taking a knife and stabbing [the victim] not in front of him, but from behind or the side when he wasn't looking and killing him."  Specifically, the defendant contends that the evidence does not support the Commonwealth's inference that the stabbing occurred from either the side of or behind the victim, as the medical examiner testified that the wound would cause an arterial spray "in vaguely a forward direction," and the defense expert testified that he saw arterial spray on the defendant's shirt.  As the defendant did not object to the Commonwealth's

argument, we review to determine if there was error, and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 821 (2018).

"The prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom." Commonwealth v. Johnson, 429 Mass. 745, 750 (1999), quoting Commonwealth v. Paradise, 405 Mass. 141, 152 (1989). "The inferences suggested by the prosecutor need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Dinkins, 415 Mass. 715, 725 (1993).

Here, sufficient blood spray evidence existed in the record to reasonably infer that the defendant stabbed the victim from the side or behind. See note 10, supra. The Commonwealth's argument was therefore supported by the evidence and the fair inferences to be drawn therefrom.

b. Reliance on expert testimony. Next, the defendant claims that the Commonwealth, in its closing argument, erroneously summarized Dr. Adams's opinion that the victim was a victim of intimate partner violence, based in part on the defendant's fits of rage.

We discern no error in this aspect of the Commonwealth's closing. Dr. Adams's testimony was in evidence, albeit in error, as discussed, supra, and the Commonwealth accurately

26

summarized such testimony.  See Johnson, 429 Mass. at 750 (applying substantial likelihood standard).

c.  Fits of rage.  Finally, the defendant claims that the Commonwealth, in its closing argument, improperly referred to the defendant's "fits of rage" to prove that she acted in conformity with a character trait for violence.

Contrary to the defendant's assertion, the prosecutor explained to the jury that he was "only suggesting [the fits of rage] to you as you consider the defendant's state of mind for what happened on May 7th."  See Gonzalez, 469 Mass. at 420 (prior bad acts admissible if relevant to show defendant's motive, intent, or state of mind).  To the extent the jury could have misinterpreted the purpose of such evidence, the judge mitigated any undue prejudice with a limiting instruction on the manner in which the jury could properly consider the defendant's prior bad acts.  See Donahue, 430 Mass. at 718.[14]

Judgment affirmed.

By the Court (Blake, C.J.,
 Meade & Grant, JJ.[15]),

Clerk

Entered:  April 30, 2025.

---

[14] For the reasons discussed, supra, to the extent that errors occurred, we conclude that there was no cumulative error necessitating a new trial.

[15] The panelists are listed in order of seniority.

27